UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID P. THORNTON,

                                        Plaintiff,

v.                                                                    5:05-CV-827
                                                                      (LEK/GHL)
MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                                        Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

CORNELL LEGAL AID                                 BARRY STROM, ESQ.
CORNELL UNIVERSITY
*Counsel for Plaintiff*
Myron Taylor Hall
Ithaca, New York 14853


HON. GLENN T. SUDDABY                          WILLIAM H. PEASE, ESQ.
United States Attorney for the                      Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
100 South Clinton Street
Syracuse, New York 13261-7198


OFFICE OF GENERAL COUNSEL                 BARBARA L. SPIVAK, ESQ.
Social Security Administration                     Chief Counsel, Region II
*Counsel for Defendant*
26 Federal Plaza                                         ARTHUR SWERDLOFF, ESQ.
New York, New York 10278                         Assistant Regional Counsel



GEORGE H. LOWE, United States Magistrate Judge

_____

    [1]  Michael J. Astrue became Commissioner of Social Security on February 12, 2007.  Pursuant to
Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit
for Jo Anne B. Barnhart.

<u>REPORT AND RECOMMENDATION</u>[2]

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed an application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on August 18, 2003.  (Administrative Transcript ("T") at 171-73, 655-58, Dkt. No. 10.)  The applications were denied initially.  (T. at 131-37, 659.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on November 19, 2004 and continued on January 24, 2005.  (T. at 36-130.)  On February 17, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 15-27.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 2, 2005.  (T. at 6-9.)  Plaintiff commenced this action on July 1, 2005.  (Dkt. No. 1.)

### B.   The Contentions

Plaintiff makes the following claims:

(1)     The Commissioner erred in failing to give controlling weight to the opinion of a treating source.  (Dkt. No. 11 at 4-15.)

(2)     The Commissioner erred in determining that the Plaintiff was capable of performing his past relevant work.  (Dkt. No. 11 at 15-18.)

(3)     The Commissioner erred in determining that jobs existed in sufficient numbers in the national and regional economy that the Plaintiff could perform.  (Dkt. No. 11 at 18-20.)

---

[2]  This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 16.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2005).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful

3

> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two,
> the SSA will find non-disability unless the claimant shows that he
> has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities."
> [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency
> determines whether the impairment which enabled the claimant to
> survive step two is on the list of impairments presumed severe
> enough to render one disabled; if so, the claimant qualifies.  [20
> C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment
> is not on the list, the inquiry proceeds to step four, at which the
> SSA assesses whether the claimant can do his previous work;
> unless he shows that he cannot, he is determined not to be disabled.
> If the claimant survives the fourth stage, the fifth, and final, step
> requires the SSA to consider so-called "vocational factors" (the
> claimant's age, education, and past work experience), and to
> determine whether the claimant is capable of performing other jobs
> existing in significant numbers in the national economy.  [20
> C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d

4

983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE PLAINTIFF

Plaintiff was forty years old at the time the ALJ rendered his decision.  (T. at 27, 171.)

He is a college graduate and previously worked as a donut fryer, cook, cashier, computer operator

and programmer, veterinary technician, custodian, armed and unarmed security guard, and

United States Air Force security policeman.  (T. at 207-08, 212, 217.)  Plaintiff alleges disability

due to right knee arthritis, low back pain with sciatica, a herniated cervical disc, cubital tunnel

syndrome in both arms, carpal tunnel syndrome, and right shoulder impingement.  (Dkt. No. 11

at 2.)

## IV.    THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since

the alleged onset date; (2) Plaintiff had severe right shoulder tendonosis/bursitis, residuals of

operative repair of a herniated disc in the cervical spine, degenerative joint disease of the

lumbosacral spine, residuals of carpal tunnel release bilaterally, degenerative joint disease of the

right knee, and obesity, but they did not meet or equal a listed impairment; (3) Plaintiff's

allegations of disabling symptoms were not totally credible; (4) Plaintiff had the residual

functional capacity ("RFC") to perform the requirements of sedentary work with the additional

limitations that he is restricted from climbing, stooping, crouching, crawling, and kneeling, he

can understand, carry out, and remember no more than simple instructions, he can use his

judgment, respond appropriately to supervision, co-workers, usual work situations, and deal with

changes in a routine work setting; (5) Plaintiff could perform his past relevant work as a

computer programmer; and (6) in the alternative, if he could not perform any of his past relevant

work, Medical-Vocational Rules 201.27, 201.28, and 201.29 dictate a finding that he was not

6

disabled.  (T. at 26-27.)

## V.     DISCUSSION

### A.     Whether the Commissioner Erred in Determining That the Opinion of Plaintiff's Treating Physician Was Not Entitled to Controlling Weight

Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinion of his treating physician, Dr. Barry Pollack.  (Dkt. No. 11 at 4-15.)  Defendant contends that the ALJ's findings are supported by substantial evidence and should be affirmed.  (Dkt. No. 16 at 6-16.)

The medical opinions of a treating physician[3] are to be given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (2005).  In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2).  Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts.  Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

*Halloran v. Barnhart*, 362 F.3d at 32.

---

[3]  "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant.  20 C.F.R. §§ 404.1502 & 416.902 (2005).

However, "[a]n ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Id.*  These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (2005).

Here, the ALJ determined that because the opinion of the state agency consultant deserved no weight, the opinions of Drs. Finver and Pollack both deserved substantial consideration and weight.  (T. at 23.)  However, the ALJ proceeded to accord more weight to the opinion of Dr. Finver, who opined that Plaintiff should do no heavy lifting over twenty-five pounds, no climbing, and no more than two hours of walking per day.  (T. at 602.)  The ALJ stated that Dr. Finver was most familiar with the totality of Plaintiff's conditions and had an extensive relationship with him.  (T. at 23.)  Notwithstanding, the ALJ stated that Dr. Pollack's findings regarding Plaintiff's ability to lift and carry as well as the restrictions as to climbing, stooping, crouching, crawling, and kneeling were supported by the record and therefore accepted. (T. at 24.)  The ALJ found, nonetheless, that the limitations imposed by Dr. Pollack with regard to Plaintiff's ability to reach, sit, stand, or walk were rejected as they were not supported by the objective signs and laboratory findings.  (*Id.*)[4]

On November 11, 2004, Dr. Pollack found that Plaintiff could lift and carry between five

---

[4]  Although the ALJ found that Dr. Pollack's opinion was inconsistent with that of Dr. Finver as it was more limiting, the ALJ's statement is not completely correct.  Both Dr. Pollack and Finver stated that Plaintiff should not climb and he could not walk more than two hours.  (T. 602, 652-53.)

and ten pounds, sit, stand, and walk for approximately two hours in an eight-hour workday but for less than an hour without interruption, and that a formal functional capacity evaluation would be needed for accuracy as the findings were estimates.  (T. at 651-52.)  He also stated that Plaintiff would have to change positions as the need arose, there were no problems with grasping, fine manipulation, handling, fingering, or feeling with either hand, he could rarely balance, and he could never climb, stoop, crouch, kneel, crawl, reach, and twist.  (T. at 652-54.)  Although many of Dr. Pollack's findings could be supported by the record, as noted by the ALJ, Dr. Pollack's conclusions regarding Plaintiff's ability to sit and reach are inconsistent with the record as a whole.[5]  (T. at 24.)

In March 2003, Dr. Finver found that Plaintiff's neck was supple although tender with limited range of motion, his upper extremity muscle strength was 5/5 bilaterally, and deep tendon reflexes were intact and symmetrical.  (T. at 367-68.)  The same month, an x-ray of Plaintiff's cervical spine showed no fracture or sublaxation and only mild degenerative changes, and x-rays taken of his right knee and right hip were negative.  (T. at 364-65.)  In April 2003, Dr. Greene reported that Plaintiff could easily do straight leg raises.  (T. at 337.)  Also in April 2003, Dr. Marilynn Price stated that Plaintiff had full range of motion in his right shoulder with only mild tenderness, there was no instability, coordination was intact, and strength was 5/5 in all extremities.  (T. at 479.)

After Plaintiff's right shoulder surgery in August 2003, Dr. Bruce L. Greene noted that Plaintiff had fairly good range of motion and was neurovascularly intact.  (T. at 323, 346-47.)

---

[5]  Plaintiff erroneously states that the ALJ concluded that he had "no limitations on sitting and standing."  (Dkt. No. 11 at 11.)  In her decision, the ALJ found that Plaintiff had no limitation on the time he could sit but that he could only stand and walk for two hours in an eight-hour workday.  (T. at 24.)

Even prior to the surgery, Dr. Greene had found that Plaintiff was neurovascularly intact and did not have any paresthesias radiating to his right upper extremity, although range of motion had been limited.  (T. at 329, 358.)  Additionally in August 2003, a Magnetic Resonance Imaging ("MRI") of Plaintiff's lumbar spine showed only mild spinal canal epidural lipomatosis with the remainder of the study being normal.  (T. at 345.)

In September 2003, Dr. Frank Norsky, a state agency consultant, stated that there was no swelling and minimal tenderness to palpation in the right shoulder, range of motion was only slightly impaired, there was no muscle atrophy, and range of motion in the remaining joints, including the elbows and wrists, was normal.  (T. at 340-41.)  He also found that there was no deformity or significant tenderness in Plaintiff's lumbar spine, he could walk on his toes, there was no difficulty getting on and off the examination table, and straight leg raising was negative.  (T. at 341.)  In October 2003, Dr. Greene stated that Plaintiff walked with a smooth, fluid, non-ataxic, and non-antalgic gait and that there was no evidence of tenderness in the right shoulder.  (T. at 509.)

Subsequently, in November 2003, Dr. Pollack noted that an MRI of Plaintiff's lumbar spine was essentially normal.  (T. at 405.)  Dr. Pollack also reported that Plaintiff's strength and sensation were intact, deep tendon reflexes were symmetric, and cervical range of motion was full without symptoms.  (T. at 407.)  That same month, Dr. Greene stated that Plaintiff's right shoulder was improving although his right knee was still causing pain.  (T. at 507.)  In December 2003, Dr. Greene noted that Plaintiff should not use his crutches for his right knee problems very often as it was slowing down his progress.  (T. at 505.)

Thereafter, on January 7, 2004, Dr. Greene stated that Plaintiff had full range of motion

of his right knee although he felt mild discomfort.  (T. at 415.)  On January 13, 2004, Dr.

Lawrence P. Endo reported that Plaintiff's neck motion was mildly limited, he had no synovitis

or synovial effusions in the small joints of his hands or wrists, the lumbar spine was tender, and

his motor strength was 5/5.  (T. at 393.)  In February 2004, Dr. Pollack opined that Plaintiff had

full cervical range of motion without discomfort or radicular symptoms.  (T. at 401.)  The same

month, Dr. Finver found that Plaintiff's muscle strength was 5/5 and he was neurologically

intact.  (T. at 431.)

   In March 2004, Dr. Pollack stated that Plaintiff had normal strength in both upper

extremities.  (T. at 399-400.)  The same month, Registered Nurse ("RN") Michael Ronald

reported that although range of motion in the shoulder was limited, there was no tenderness to

palpation.  (T. at 412.)  In April 2004, Dr. Pollack noted that Plaintiff complained of pain if he

stood over two hours at a time but made no mention that he had trouble sitting for any period.

(T. at 397.)  Subsequently, in June 2004, on the same day Plaintiff underwent a C6-7 anterior

cervical discectomy with fusion, Dr. Pollack stated that cranial nerves were intact, deep tendon

reflexes were symmetric, and gait, station, and tandem walk were normal.  (T. at 422.)

   Based on this evidence, Dr. Pollack's assessment was not entirely consistent with the

medical record as a whole and did not deserve controlling weight in all aspects of his findings.[6]

The medical evidence demonstrates that Plaintiff was capable of reaching and there was little to

no evidence establishing that Plaintiff had difficulty sitting.  Furthermore, despite Plaintiff's

---

[6] Even though Dr. Finver later stated in April 2005 that he "did not intend the limitations [given on May 17, 2004] as a complete description of the patient's limitations and did not intend that it should be construed as inconsistent with the limitations given by Dr. Pollack[,]" as discussed above, some of Dr. Pollack's findings were not supported by substantial evidence and thus did not deserve controlling weight.  (*See* T. at 671.)

11

claim to the contrary, the ALJ accorded the opinion substantial weight by utilizing the majority

of conclusions rendered by Dr. Pollack, apart from those that were not supported by substantial

evidence.  Thus, the ALJ did not err and it is recommended the ALJ's determination be affirmed

on this ground.

> **B.     Whether the Commissioner Erred in Determining That Plaintiff Could Perform His Past Relevant Work**

Plaintiff contends that the ALJ erroneously found that he could perform his past relevant

work as a computer programmer.  (Dkt. No. 11 at 15-18.)

As noted previously, if the claimant's impairments do not meet or equal the listed

impairments, the Commissioner proceeds to Step Four and considers whether the claimant has

the residual functional capacity to perform his past relevant work despite the existence of severe

impairments.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ found that Plaintiff had the

RFC to do

> sedentary work[7] with unlimited sitting, standing and walking [for] two hours in an eight-hour day and lifting and carrying [] 10 pounds occasionally but he is restricted from climbing, stooping, crouching, crawling and kneeling.  Furthermore, he has the residual functional capacity to meet the basic mental demands of work, i.e., understand, carry out and remember simple instructions, use judgment, respond appropriately to supervision, co-workers, and the usual work situations and deal with changes in a routine work

---

[7] Sedentary work involves:
> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a) (2005).

setting.

(T. at 26.)

After rendering that finding, the ALJ employed a vocational expert to determine whether Plaintiff could perform any of his past work.  The vocational expert testified that all previous positions held by Plaintiff, apart from that of a computer programmer, could not be performed as they were of light physical demand or more.  (T. at 79-80.)  The ALJ then questioned whether Plaintiff was able to perform any of his past work if he could occasionally lift or carry up to ten pounds, sit, stand, or walk for only one hour at a time, and never, balance, stoop, crouch, kneel, crawl, twist, climb anything but stairs, or reach over his head or bend over to reach.  (T. at 83-85.)  The vocational expert stated that Plaintiff could perform his past work as a computer programmer.  (T. at 85-87.)

The ALJ relied upon that testimony and found that Plaintiff could perform his past work as a computer programmer.  (T. at 24.)  The ALJ did not err in making that determination.  The ALJ provided a hypothetical to the vocational expert that included more restrictions than delineated in the RFC assessment ultimately adopted in her decision.  Even with the added limitations, the vocational expert still opined that Plaintiff was capable of his past work.  The ALJ was entitled to rely on this vocational expert evidence.  *See Naegele v. Barnhart*, 433 F. Supp. 2d 319, 326 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1560(b)(2) for the proposition that "a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, *either as the claimant actually performed it* or as generally performed in the national economy").

Moreover, the vocational expert's testimony regarding the description of the position of a computer programmer as found in the Dictionary of Occupational Titles does not conflict with the ALJ's RFC determination. *See Dictionary of Occupational Titles*, 030.162-010, 1991 WL 646542.[8] Accordingly, it is recommended the ALJ's determination be affirmed on this ground.[9]

      **WHEREFORE,** it is hereby

      **RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the complaint (Dkt. No. 1) be **DISMISSED**.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 12, 2008
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

    [8] While there could be a conflict between the DOT and the ALJ's hypothetical including an inability to reach overhead or bend over to reach, this was not a limitation present in the ALJ's original RFC determination. *Compare Dictionary of Occupational Titles*, 030.162-010, 1991 WL 646542 *with* (T. at 24.)

    [9] Because the ALJ properly found that Plaintiff could perform his past relevant work, the Court need not address Plaintiff's final claim that the Commissioner erred at Step 5 in finding that other work exists in significant numbers in the national economy that he can still perform (*see* I.B. above).